*Rick L. & Amy J. Sovereign*
*401 Cherry Ave.*
*Oregon City, OR. 97045*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON – PORTLAND DIVISION

FILED 17 AUG '11 11:45 USDC-ORP

| | |
|---|---|
| RICK L. SOVEREIGN and AMY J. SOVEREIGN, | Case No. CV '11 995 BR |
| Plaintiffs, | |
| vs. | VERIFIED COMPLAINT FOR **EMERGENCY** DECLARATORY RELIEF |
| DEUTSCHE BANK, MORTGAGEIT, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEM, CITIMORTGAGE and CAL-WESTERN RECONVEYANCE CORPORATION; | |
| Defendants. | |

## I. PLAINTIFFS' STATEMENT OF THE CASE

This is a civil action seeking declaratory relief. Defendants, and all of them, an association in fact, have caused a Notice of Default and Election to Sell, claiming an amount due, to issue respecting the property owned by Plaintiffs located at 401 Cherry Avenue, Oregon City, OR 97045, hereinafter "Subject Property." Plaintiffs assert that Defendants are owed nothing by Plaintiffs and therefore any affirmative claim on the part of Defendants that Plaintiffs are in default and that Defendants possess the authority to invoke and execute on an illegal power of sale against the Subject Property is false. This declaratory relief action seeks to resolve the justiciable controversy.

Plaintiffs are unschooled in the legal arts and are least sophisticated consumers as that term is used in the Fair Debt Collection Practices Act.

Verified Complaint for EMERGENCY
Declaratory Relief - Page 1 of 20

4/22/22

Defendants are the superior party and have documents, which Defendants will not provide and are essential to this lawsuit. Heretofore Defendants have deliberately withheld such documents from Plaintiffs, despite repeated requests from Plaintiffs.

## II.  JURISDICTION

The transactions and events which are the subject matter of this Petition all occurred within the District of Oregon. The amount in dispute is equivalent to the now current value of the Subject Property, which exceeds $75,000.

This case arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States due to Defendants' tortious conduct of fraud. Furthermore, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties; Plaintiffs are domiciled in Oregon, Defendant MortgageIT (MIT) is domiciled in New York, Deutsche Bank (DB) is domiciled in Germany, Mortgage Electronic Registration Systems, Inc. (MERS) is domiciled in Delaware, CitiMortgage (CM) is domiciled in Missouri and Defendant Cal-Western Reconveyance Corporation (CWRC) is domiciled in California.

## III.  PARTIES

Plaintiffs are, and at all times relevant to this Petition were, the owner of the Subject Property and at all times relevant to this Petition domiciled in Oregon. The Subject Property is legally described as:

> LOT 3, BLOCK 15, RIVERCREST PARK ADDITION NO. 2, IN THE CITY OF OREGON CITY, CLACKAMAS COUNTY, OREGON

Defendant **MortgageIT**, doing business in Oregon, is a foreign business corporation domiciled in New York with its principal place of business at 60 Wall Street, New York, NY 10005. Its phone number is (212) 651-7700. Defendant's registered agent is CT Corporation

System, 388 State Street, Suite 420, Salem, OR 97301. See **Exhibit 1** - Oregon SoS records/MIT. MIT was acquired by DB on July 12, 2006. See **Exhibit 2** – Deutsche Bank News Release.

Defendant **DB** is, on information and belief, a foreign corporation, which does business in Oregon. DB does business illegally in Oregon because it does not have a registered agent in Oregon. See **Exhibit 3** - Oregon SoS records/DB. DB has a U.S. principal office located at 60 Wall Street, New York, NY 10005. Its telephone number is (212) 250-2500. Defendant DB is a German business corporation with an office in Manhattan. DB acquired the business of Defendant MortgageIT, Inc. on or about January 3, 2007. Since DB acquired MortgageIT, DB has operated the business of MortgageIT as part of its residential mortgage business based in Manhattan.

Defendant **MERS** is a Delaware corporation engaged in the business of holding legal title to mortgages. It does business in Oregon as evidenced by inclusion of its name on Deeds of Trust appearing in Oregon land records. Defendant MERS does business in Oregon illegally because MERS is not registered to do business in Oregon. See **Exhibit 4** - Oregon SoS records/MERS. MERS operates a national electronic registry that tracks beneficial ownership interests and servicing rights associated with residential mortgage loans and any changes in those interests or rights. There are approximately 5,000 participating members, of which 3,000 are residential mortgage servicers. Members register loans and report transfers, foreclosures, and other changes to the status of residential mortgage loans on the MERS System. There are currently approximately 31 million active residential mortgage loans registered on the MERS System. The MERS website (www.mersinc.org) displays the address of 1818 Library Street, Suite 300, Reston, VA 20190 as the principal office location. Its telephone number is (800) 646-6377. MERS serves as mortgagee of record and nominee for the participating members in local land records. MERS takes action as mortgagee through documents executed by "certifying officers"

1  of MERS. MERS has designated these individuals, who are officers or employees of Members
2  or certain third-parties who have contractual relationships with members, as officers of MERS.
3  By virtue of these designations, the certifying officers execute legal documents in the name of
4  MERS, such as mortgage assignments and lien releases.

5       Defendant **CM** has done and continues to do business in this state as a foreign business
6  corporation. CM's Registered Agent is CT Corporation System, 388 State Street, Suite 420,
7  Salem, OR 97301. The CM principal office is located at 1000 Technology Dr. O'Fallon, MO
8  63368. Its telephone number is (800) 283-7918. See **Exhibit 5** - Oregon SoS records/CM. The
9  mortgage lending unit of Citigroup, CM, originates and services residential mortgages
10 throughout the US. It manages most of its parent's $170 billion mortgage portfolio. CM also
11 offers refinancing and investment products. The company sells through retail, online, and
12 correspondent channels. In 2009 Citigroup separated CM and other money-losing units such as
13 CitiFinancial into a new business called Citi Holdings.

14      Defendant **CWRC** is, on information and belief, a foreign corporation, which does
15 business in Oregon. CWRC's registered agent is National Registered Agents, Inc., 325 13th
16 Street NE, Suite 501, Salem, OR 97301. See **Exhibit 6** - Oregon SoS records/CWRC. CWRC's
17 principal place of business is 525 E. Main, El Cajon, CA 92020. Its telephone number is
18 (800) 546-1531. At all times relevant to this Complaint, Plaintiffs allege Defendant CWRC was
19 an agent for the putative Lender. CWRC did not and does not have a business location in
20 Oregon.

21                                              **IV.    JUDICIAL NOTICE**

22      Plaintiffs request this Court take judicial notice, pursuant to FRE, Rule 201(d), of the
23 Exhibits included with this Complaint, as follows: 1) Exhibits 1 – 6 Oregon Secretary of State
24 business records searches, 2) Exhibit 7 - Promissory Note, 3) Exhibit 8 - Deed of Trust, 4)

Exhibit 9 - Assignment of Deed of Trust, 5) Exhibit 10 – Substitution of Trustee, 6) Exhibit 11 – Notice of :Default and Election to Sell, 7) Exhibit 12 – Notice of Trustee Sale, and 8) Exhibit 13 – Fannie Mae Ownership.  Federal Rule of Evidence 201 states that a court may take judicial notice of a fact outside the pleadings if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Plaintiffs affirm that the various exhibits exist, but Plaintiffs dispute the veracity of Exhibits 6 through 12 for the reasons explained below.

## V.    FACTS

On or about January 24, 2007, Plaintiffs consummated a refinance loan, number 40752449, of the Subject Property with MIT by signing a Promissory Note in favor of MIT, as purported Lender, for $333,000.  See **Exhibit 7** – Promissory Note.  See also Plaintiffs Affidavit ¶ 2.

On or about January 24, 2007, Plaintiffs signed a Deed of Trust in favor of non-party Trustee, Western Title and Escrow Company, hereinafter "WTC," for $333,000.  The Deed of Trust contains language at Paragraph 22 as to who has the authority to accelerate the payment of the Promissory Note, to wit: "**Lender** shall give notice to Borrower…"  [Emphasis added]

MIT did not Notice Plaintiffs that Plaintiffs were in default.  See Plaintiffs' Affidavit ¶¶ 6 & 7.

The Deed of Trust contains the following language:

(E) "MERS" is Mortgage Electronic Registration Systems, Inc, **MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns**, MERS is the beneficiary under this Security Instrument, MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. [Emphasis added]  See **Exhibit 8** – Deed of Trust.

On or about March 15, 2011 CM claims to have become the successor in interest to the Plaintiff's Deed of Trust by and through a document titled "Assignment of Deed of Trust,"

signed by Scott Scheiner, Assistant Secretary of MERS and Notarized on the same day by Alex D. Grossman of Missouri. The document was entered into Clackamas County official records under the recorder's number, 2011-019535, on March 30, 2011. See **Exhibit 9** - Assignment of Deed of Trust.

On or about March 15, 2011 CWRC claims to have become the successor trustee of the Deed of Trust by and through a document titled "Substitution of Trustee," signed by Scott Scheiner, Vice President, CitiMortgage, Inc and Notarized on the same day by Alex D. Grossman of Missouri. The document was entered into Clackamas County official records under the recorder's number, 2011-019536, on March 30, 2011. See **Exhibit 10** - Substitution of Trustee

On or about April 7, 2011 Plaintiffs received a document titled "Notice of Default and Election to Sell," created, recorded and sent to Plaintiffs by CWRC, the signatory of which was Yvonne J. Wheeler, A.V.P. (presumably Assistant Vice President), a known robo-signer, who signed the Notice on March 23, 2011. The Notice was not notarized until March 29, 2011 by Rosalyn Hall of California. The document was entered into Clackamas County official records under the recorder's number, 2011-019537, on March 30, 2011. See **Exhibit 11** - Notice of Default and Election to Sell.

On or about April 7, 2011 Plaintiffs received a document titled "Trustee's Notice of Sale" from CWRC dated March 23, 2011 and signed by an unknown person, whose corporate capacity is absent and unknown. The document bears a certification stamp with the signature of Naomi Feistel, claiming "I CERTIFY THIS TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL." The signature on the certification stamp and the signature as a designee of CWRC are different. No acknowledgement or jurat notarization is present. See **Exhibit 12** – Trustee's Notice of Sale. See also Plaintiffs' Affidavit ¶ 8.

Verified Complaint for EMERGENCY
Declaratory Relief - Page 6 of 20

The Notice of Trustee Sale set the date for auction of Plaintiffs' property for August 1, 2011 at 1:00 p.m. standard time at the Main Street entrance to the Clackamas Court Courthouse, 807 Main Street, Oregon City, County of Clackamas, State of Oregon. The sale was subsequently delayed to September 1, 2011.

Despite Plaintiffs' diligence and good faith efforts, Plaintiffs have been unable to determine with certainty the Beneficiary of Plaintiffs' Promissory Note. Plaintiffs queried both the Fannie Mae and Freddie Mac websites to learn that Fannie Mae is the purported owner of the Plaintiffs' Promissory Note. See **Exhibit 13** – Fannie Mae Ownership. The purported ownership is contrary to O.R.S. 86.735 because the transaction is unrecorded in Clackamas County land records.

## VI.   DECLARATORY JUDGMENT

Plaintiffs reaffirm and reallege each and every paragraph hereinabove as if set forth fully below.

There are two bodies of law impacting mortgage foreclosure in non-judicial foreclosure states; 1) contract law, and 2) statutory law. The explanation below will examine each body of law separately.

Necessarily, contract law must be the first to be examined. All disputes sounding in contract find their origin in a breach of a legal duty contained within the terms and conditions of the contract. If the contract is invalid, illegal or otherwise void the legal duty cannot be breached. If the contract is valid, then the legal duty is examined to see if a breach or default has occurred. The default must be factually supported by competent evidence. If the default can be established, then and only then is statutory law applied to provide relief to the aggrieved party.

Fraud vitiates the entire contract. *Coson v. Roehl*, 63 Wn.2d 384, 387 P.2d 541 (Wash., 1963). In the context of mortgage foreclosure the contract is found in the Promissory Note and

the Deed of Trust. The originator of the loan, MIT, fraudulently misrepresented their capacity as a Lender. MIT is a mere loan or mortgage broker having no title to or ownership of the asset loaned; the money to fund the loan. The money to fund the loan came from an unknown third party with whom MIT contracted and was paid a fee.

The entire foreclosure process must be construed in the context of this country's system of jurisprudence, where **anyone who advances an <u>affirmative claim</u> has the burden of proving the claim**, to the extent that fidelity is shown to the Federal Rules of Civil Procedure, Rules of Evidence, oath of office and judicial canons where the truth is sought within the realm of substantive and procedural due process.

## I. CONTRACT LAW

The foreclosure process begins when a borrower is deemed to have defaulted. A default is defined in Black's Law Sixth Edition as a "failure to perform a legal or contractual duty." The Ninth Circuit has followed the holding in *Grinstead v. U.S.*, 122 F.3d 1071 (C.A.9 (Cal.), 1997), where a default is deemed to be a "Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default."

To default, the Obligor, the Plaintiffs in this case, must first be bound by a legal duty contained within the four corners of a valid contract. Before a default can occur a valid and legally enforceable contract must first be struck. Such contract must contain certain elements, to wit: 1) An offer, 2) A strict acceptance, 3) Legal purpose, 4) **Mutuality of obligation**, 5) **Consideration**, and 6) Competent parties. *Vick v. Henry Ford & Son*, 17 F.(2d) 919. Plaintiffs focus on consideration and mutuality of obligation.

Consideration is the product of a bargained-for exchange, *Colorado Nat'l Bank of Denver v. Bohm*, 286 F.2d 494, 496 (9th Cir.1961), consisting in either a benefit to the promisor or a detriment to the promisee, *Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co.*, 795 F.2d 1417,

1427 (9th Cir.1986). Like other essential elements of a contract, the consideration given in exchange for a promise must be specified with certainty. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir.1989); *Transamerica Equipment Leasing Corp. v. Union Bank*, 426 F.2d 273, 274 (9th Cir.1970). For a contract to be enforceable, its terms must be "reasonably certain" and must "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Restatement (Second) of Contracts Sec.* 33 (1981). Plaintiffs allege no consideration because the funding Plaintiffs received was the rightful property of a third party, not MIT.

Mutuality of obligation, otherwise known as meeting of the minds, is an issue of fact. *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 712 (9th Cir.1990). Mutuality of obligation refers to the parties' mutual understanding and assent to the expression of their agreement. *Weynand v Weynand*, 990 S.W.2d 843, 846 (Tex. App.-Dallas 1999, pet. denied). There is no dispute that MIT claims to be a Lender of the funds required to refinance the Subject Property as is clearly shown in the Promissory Note and Deed of Trust. Plaintiffs signed both documents with the expectation and understanding that MIT was the Lender, when in fact, MIT was not the Lender. The money to fund the refinance came from an undisclosed third party, most likely one or more investors procured through securitization of Plaintiffs' loan. Further, Plaintiffs did not know, nor could Plaintiffs have reasonably known that Plaintiffs loan was to be securitized; causing Plaintiffs' loan to be more costly than a traditional non-securitized loan.

The contract (Promissory Note and Deed of Trust) is void for at least two reasons. First, MIT did not advance money or credit therefore the contract fails for lack of consideration. See Plaintiffs' Affidavit ¶ 3. Second, MIT fraudulently and deliberately withheld the true terms and conditions of Plaintiffs' loan, that Plaintiffs loan would be securitized and be overpriced, hence preventing mutuality of obligation.

Plaintiffs deny that Plaintiffs loan on the Subject Property is in default. Plaintiffs allege that the loan is not in default to any of the named Defendants. Plaintiffs' assertion could easily be proved with loan level files in Defendants' possession. The Trustee, the Master Servicer and the Sub Servicer, if any, are obligated by and through the Pooling and Serving Agreement to pay the Obligee, in the event the borrower does not.

When Courts finally becomes fed up with all of the misbehavior in the foreclosure industry and FOLLOW THE MONEY, the Court will eliminate the obfuscation of false documentation, save judicial resources and achieve justice. To put it the most simple terms possible, this is a matter of substance over form.

Plaintiffs allege MIT was not the Obligee, but rather a mortgage broker collecting a fee for its services. The identity of the true Obligee was purposefully concealed as was the entire scheme and artifice of securitization.

Defendant MIT represented to Plaintiffs that MIT advanced money or credit in the form of a loan to refinance the Subject Property. The material representation was false, MIT knew the representation was false, intending and expecting Plaintiffs to act on the falsity; Plaintiffs did not know the representation was false and subsequently and justifiably relied on it to Plaintiffs' ultimate detriment.

Plaintiffs were proximately damaged by Defendant MIT's fraud because the omissions, misrepresentations and deception as to who was the Obligee and that the loan was securitized caused Plaintiffs to over pay for the loan compared to a loan that is not securitized. The loan was laced with myriad fees of many players in the securitization scheme, each pirating their share. Plaintiffs have a right and MIT has duty to disclose the Obligee AND to disclose completely all material terms and conditions. MIT did not!

Defendant MIT was a mere mortgage or loan BROKER. The money or credit that was advanced was the rightful property of an unknown entity alleged to be one or more investors. Defendant MIT's books and records will show that MIT collected a fee for HANDLING the money or credit advanced to Plaintiffs and as such the transaction will appear on MIT's <u>income statement</u> only! If MIT was a true and bona fide Obligee, the transaction would appear on MIT's <u>balance sheet</u>.

## II.    STATUTORY LAW

The second body of law, statutory law, is triggered only after it has been determined, in the context of a mortgage that 1) the borrower owed a legal duty to a creditor, and 2) the legal duty had been breached in the nature of a default.

Although the allegations in the Contract Law section should be sufficient to warrant the relief herein requested, Plaintiffs, out of an abundance of caution, allege that MERS fatally contaminated the chain of title and as a result nullified the Deed of Trust, making the Promissory Note an unsecured instrument as will be further explained below.

Securitization is the financial practice of pooling various types of contractual debt such as residential mortgages, commercial mortgages, auto loans or credit card debt obligations and selling said debt as bonds, pass-through securities, or Collateralized Mortgage Obligations (CMOs), to various investors. The principal and interest on the debt, underlying the security, is paid back to the various investors regularly. Securities backed by mortgage receivables are called mortgage-backed securities.

The instant a loan, as the one here, was sold into the securitization pipeline, the originator is paid in full, MIT in this case. The purchasing entity then owns the underlying loan and the right to the cash flow therefrom.

Securitization involves a daisy chain of many entities, all of whom are paid a fee or a

commission resulting in a loan that is more costly than a loan that is not securitized.

The actors in the securitization scheme all knew or should have known the cost of the loan was overstated and that the overstated loan would obscenely profit Defendants and simultaneously harm Plaintiffs.

### A. CWRC

Defendant CWRC has taken the unverified position by and through the Notice of Default and Election to Sell affirmatively claiming that CWRC is the current trustee and possesses the authority to execute the power of sale. Plaintiffs dispute the claim and allege CWRC has no such power because the Substitution of Trustee document is invalid. CM does not have the authority of a beneficiary and cannot effect the transfer.

CWRC affirmatively claimed, through a false and invalid Substitution of Trustee document AND subsequently through a false and invalid Notice of Default and Election to Sell to be the authorized trustee and to possess the power of sale, when CWRC knew such material representation was false, uttered with the intention that Plaintiffs would be and were entitled to rely upon the falsity to Plaintiff's ultimate detriment. The representation was false because the Promissory Note and the Deed of Trust are nullities due to the purported Lender not being the Lender in fact, or Creditor AND that as will be explained below CM lacks the authority to substitute the trustee because the MERS Assignment of Deed of Trust to CM was invalid; MERS does not possess the authority of a beneficiary to effect the assignment.

CWRC cannot be the successor trustee for two reasons. First, the so-called Lender MIT lacked the authority to assign the loan or any of its components to a successor because MIT was not a Lender in fact (beneficiary). Second, as explained immediately above, MERS invalidated both the CM assignment and the CWRC substitution.

Plaintiffs allege Defendants by and through Defendant CWRC, agent of the loan's putative beneficiary and purported successor trustee to Plaintiff's Deed of Trust, wrongfully conspired to initiate a non-judicial foreclosure proceeding, pursuant to the Notice of Default and Election to Sell and Notice of Trustee Sale mentioned above, to foreclose on a mortgage pertaining to the Subject Property.

### B. CM

Defendant CM has taken the unverified position affirmatively claiming by and through the Assignment of Deed of Trust that CM talismanically possesses the authority to invoke the power of sale for some heretofore unknown and unnamed beneficiary entitled to payment. Plaintiffs dispute Defendant's claim and allege CM has no such power.

The Assignment of Deed of Trust above purports to transfer the Deed of Trust only. Plaintiffs allege that the Promissory Note was not transferred, but instead separated from the Deed of Trust, nullifying the latter. The Deed of Trust follows the Promissory Note, not vice versa. *Saxon Mortg. Serv., Inc. v. Hillery*, No. C-08-4357 EMC, 2008 U.S. Dist. LEXIS 100056, 2008 WL 5170180, at *5 (N.D. Cal. Dec. 9, 2008) (same as Bellistri); *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009) (successor lender had no standing to seek relief from bankruptcy stay and move forward with foreclosure because MERS had no authority to transfer the note).

Plaintiffs attempted a loan modification. First, though, Plaintiffs were instructed to stop their payments. See Plaintiffs' Affidavit ¶¶ 4 & 5. Then Plaintiffs were run around the barn countless times, where CM would "lose" documents, Plaintiffs would resubmit and then CM would lose them again. Finally, Plaintiffs were turned down and were in a much worse position than had then not applied for a loan modification in the first place.

### C. MERS

Defendant MERS has taken the unverified position affirmatively claiming that MERS is Beneficiary under the Security Instrument (Deed of Trust), while simultaneously asserting that MERS is acting solely as a nominee for Lender and Lender's successors.

Plaintiffs dispute Defendant's claim that MERS is a Beneficiary and affirm and re-allege that MERS is merely a nominee without the authority of Beneficiary.

Under the Oregon Trust Deed Act, "'Beneficiary' means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest..." O.R.S. 86.705(1).

Although the trust deed lists MERS as the nominal beneficiary "solely as a nominee for Lender...," the deed makes clear that MERS is not "the person for whose benefit a Deed is given," O.R.S. 86.705(1), for the following reasons: 1) The trust deed lists MIT, not MERS, as "Lender." 2) All payments on the loan are owed to MIT, not MERS. 3) MIT, not MERS, "may invoke the power of sale and any other remedies permitted by applicable law." *Hooker v. Nw Tr Serv Inc.* (D. Or., 2011). See also *In re Allman* (Bkrtcy.D.Or. Aug. 24, 2010) and *In Re Donald E. McCoy* Bankr.Or., 2011.

MERS has failed to establish the existence of an agency relationship with the current or successor beneficiary and Plaintiffs allege MERS has none.

Plaintiffs allege MERS to be a record keeper only, without any of the rights and duties of a Beneficiary, including the right to payment from Plaintiffs.

If Defendant CM is the current successor to the Deed of Trust, Plaintiffs allege CitiMortgage lacks the authority to **invoke** the power of sale and as a result CWRC, appointed by CM, is not authorized to sell the Subject Property.

Plaintiffs allege CWRC lacks the authority to **execute** the power of sale because the Substitution of Trustee appointing CWRC is invalid and as a result CWRC is not authorized to sell the Subject Property.

Plaintiffs further allege that Plaintiffs' loan was securitized and that the Promissory Note owner is the trust holding assets for the certificateholders, otherwise known as investors, who have not assigned their right under the Promissory Note and/or Deed of Trust to any of the Defendants in this Complaint. In fact, neither Defendant MIT nor Defendant CM lent Plaintiffs money or credit. MIT was a mere straw man and mere mortgage broker but integral members of an association in fact operating in interstate commerce and engaged, *inter alia*, in deceptive acts to the ultimate detriment of Plaintiffs.

Defendants deceived Plaintiffs by claiming Defendants, in two or more writings within a ten year period, possessed the authority to invoke the power of sale and sell the Subject Property when in fact Defendants had no such power. The deception continues to the present time and is suspected to continue into the future.

Defendants - the ones who have made an affirmative claim against Plaintiffs' property - have not demonstrated that they have suffered an actual or threatened injury as a consequence of any alleged default. In fact, there is no competent evidence of a default whatsoever. Only a conclusory and unsworn allegation of default has been made, lacking any factual sufficiency whatsoever. The Notice of Default and Election to Sell is the document that purports to establish Plaintiffs' default, however, upon careful examination, it is clear that the document contains only an ACKNOWLEDGEMENT notarization and not a JURAT notarization. Therefore, the document is unabashed hearsay and without a competent fact witness it is mere drivel. The default can only be affirmatively established by and through the **books and records of original entry** belonging to the beneficiary/creditor; a process that is otherwise known as: FOLLOW

THE MONEY! Plaintiffs allege that they are not in default because the bona fide creditor or creditors has/have yet to be identified. The Defendants in this action are strangers and interlopers. Distinct and palpable injury is legally required under applicable state and federal law in order for Defendants to satisfy the legal prerequisite proving Defendants have a sufficient personal stake in and legal standing to institute the foreclosure on the Subject Property. No such injury has been or can be established.

## VII. CONCLUSION

This Court has knowledge and notice that there is a cloud on the title of the Subject Property which Defendants have failed or refused to extinguish. The cloud arises out of Defendants filing or causing to be filed into the county records a document styled "Notice of Default and Election to Sell." Plaintiffs have been damaged by Defendants' tortious conduct and interference with Plaintiffs' right to be left alone and enjoy peaceable ownership of the Subject Property.

Plaintiffs affirmatively acknowledge an obligation exists; the entity to which repayment is to be made and the amount of the repayment is unknown. Plaintiffs allege fraud has destroyed the Promissory Note and Deed of Trust and MERS has contaminated directly and indirectly succession documents. It is crucial that Defendants do not get a free house!

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiffs requests that this court:

   a. Declare Defendant MIT is a mortgage broker and not a Lender as depicted in the Promissory Note and Deed of Trust.

   b. Declare Defendant MIT lacks the authority to assign Plaintiffs' loan.

   c. Declare Defendant MERS is solely a nominee, is not an entity entitled to payment and therefore is not a beneficiary.

d. Declare Defendant MERS cannot assign Plaintiffs' Deed of Trust.

e. Declare CM an invalid assignee respecting the Subject Property.

f. Declare CWRC an invalid assignee respecting the Subject Property.

g. An Order for Plaintiffs to recover their costs.

h. An Order to Show Cause why an evidentiary hearing should not take place.

i. An Order for Re-alignment of the parties.

j. Declare that Plaintiffs' obligation for the loan still exists, but the payee and the amount is unknown

Prepared, signed and submitted on Aug. 17, 2011 by:

_____    _____
Rick L. Sovereign                                        Amy J. Sovereign
401 Cherry Avenue
Oregon City, OR 97045
C: (503) 329-2013
E-mail: soverco@earthlink.net

## IX.   VERIFICATION

I, Rick L. Sovereign, of legal age and competent to testify, verify under penalty of perjury that the factual averments in the above and foregoing petition, complaint, and claim are truthful and accurate to the best of my knowledge and all documents verifying my claims are now in my possession. This action is well grounded in fact and warranted by existing law and in full and complete compliance with FRCP, Rule 11(a) and (b). I declare under the penalty of perjury under the laws of the State of Oregon that the foregoing is true and correct.

_____
Rick L. Sovereign

## X.   INDIVIDUAL ACKNOWLEDGMENT

STATE OF OREGON

COUNTY OF CLACKAMAS

Before me, the undersigned, a Notary Public in and for said County and State on this 16th day of August, 2011, personally appeared Rick L. Sovereign to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires: MAY 08 2015

_____ Notary Public



OFFICIAL SEAL
MARYAM RAJAIAN
NOTARY PUBLIC - OREGON
COMMISSION NO. 456260
MY COMMISSION EXPIRES MAY 08, 2015

Verified Complaint for EMERGENCY
Declaratory Relief - Page 18 of 20

## XI. AFFIDAVIT

We, Rick L. Sovereign and Amy J. Sovereign, of age and competent to testify, state as follows based on our own personal knowledge and under penalty of perjury

1. That the Subject Property is located at 401 Cherry Avenue, Oregon City, OR.

2. That Affiants refinanced the subject property with MIT on January 24, 2007.

3. That Affiants are not in possession of authenticated evidence establishing MIT lent or advanced its own money or reserves to Affiants.

4. That Affiants attempted a loan modification through CitiMortgage who instructed Affiant to stop making payments.

5. That Affiants stopped making mortgage payments on or about August 2010 after continuously making timely payments since inception.

6. That Affiants did not receive a Notice from the MIT that Affiant's loan was in default.

7. That Affiants are not in possession of authenticated evidence establishing Plaintiffs in default of any obligation to MIT or its successors or assigns, if any.

8. That Affiants received a document titled Notice Default and Election to Sell containing a mere acknowledgement notarization, not a jurat notarization.

This affidavit is made in good faith and under penalty of perjury that the above statements are true and correct to the best recollection of the Affiant.

_____     _____
Rick L. Sovereign, Affiant                            Amy J. Sovereign, Affiant

## XII. ATTESTATION

STATE OF OREGON

COUNTY OF CLACKAMAS

Before me, the undersigned, a Notary Public in and for said county and state on this __ day of August, 2011, personally appeared Rick L. Sovereign and Amy J. Sovereign to me known to be the identical persons who executed the within and foregoing instrument and acknowledged to me that they executed the same as their free and voluntary act. Given under my hand and seal the day and year last above written.

_____
Notary Public, residing: Oregon
My Commission Expires: May 08 2015



Verified Complaint for EMERGENCY
Declaratory Relief - Page 20 of 20