IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


RICK L. SOVEREIGN and AMY J.                3:11-CV-995-BR
SOVEREIGN,

        Plaintiffs,                         OPINION AND ORDER

v.

DEUTSCHE BANK; MORTGAGEIT,
INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, a foreign
corporation; CITIMORTGAGE,
INC., a foreign corporation;
and CAL-WESTERN RECONVEYANCE
CORPORATION, a foreign
corporation,

        Defendants.


RICK L. AND AMY J. SOVEREIGN
401 Cherry Avenue
Oregon City, OR 97045

        Plaintiffs, *Pro Se*


1 - OPINION AND ORDER

**WILLIAM D. MINER, III**
**BLAKE J. ROBINSON**
Davis Wright Tremaine, LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, OR 97201-5630
(503) 241-2300

        Attorneys for Defendants Deutsche Bank and
        Mortgageit, Inc.

**LETA E. GORMAN**
Jordan Schrader Ramis PC
Two Centerpointe Drive, Sixth Floor
Lake Oswego, OR 97035
(503) 598-7070

        Attorneys for Defendants Mortgage Electronic
        Registration System and CitiMortgage

**TIMOTHY B. HERING**
Dunn Carney Allen Higgins & Tongue, LLP
851 S.W. Sixth Avenue, Suite 1500
Portland, OR 97204-1357
(503) 224-6440

        Attorneys for Defendant Cal-Western Reconveyance
        Corporation


**BROWN, Judge.**

    This matter comes before the Court on the Motion (#59) to Dismiss by Defendants Mortgage Electronic Registration System (MERS), CitiMortgage (CM), and Cal-Western Reconveyance Corporation (CWRC)[1] and the Motion (#38) to Vacate Temporary

---

    [1] In its Order (#65) issued on January 4, 2012, the Court granted CWRC's Motion to Join the Motion to Dismiss filed by CM and MERS.

2 - OPINION AND ORDER

Restraining Order by CM, MERS, and CWRC.[2]

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' First Amended Verified Complaint (#55).[3]

On approximately January 24, 2007, Plaintiffs entered into a refinance loan on their home, which is located at 401 Cherry Avenue, Oregon City, Oregon 97045.  In exchange for their promise to repay the loan secured by a Deed of Trust in their home (which appears to have been recorded on January 31, 2007), Plaintiffs accepted a loan of approximately $333,000.  The loan named MortgageIt, Inc. (MIT) as the Lender and Western Title and Escrow as Trustee and appointed MERS as nominee of the Lender and as beneficiary of the Deed of Trust.  Although MIT is designated as the Lender in the loan documents, Plaintiffs allege MIT did not fund the loan, is not the lender in fact, and was instead a loan broker.

---

[2] In its Order (#65) issued on January 4, 2012, the Court granted CWRC's Motion to Join the Motion to Vacate filed by CM and MERS.

[3] The Court granted the Motion to Dismiss by MortgageIt, Inc. (MIT) and Deutsche Bank (DB), a successor to MIT, on November 15, 2012, on the ground that Plaintiffs did not state a claim for declaratory relief against these Defendants under the facts of the original Complaint.  In their Amended Complaint filed on December 15, 2011, Plaintiffs again name MIT and DB as Defendants.  MIT and DB filed a second Motion (#63) to Dismiss on January 3, 2012, which the Court granted at the hearing on January 4, 2012.  *See* Order (#66).

3 - OPINION AND ORDER

Plaintiffs allege they do not owe any obligation to the named Defendants and have not defaulted on the loan at issue.[4]

Plaintiffs assert their mortgage was part of a pooling service that made numerous transfers of Plaintiffs' mortgage that have not been properly recorded.

In August 2010 Plaintiffs sought a loan modification with CM. During that process the parties failed to reach an agreement to restructure the loan, and Plaintiffs assert CM instructed them to stop making payments on their mortgage.

On March 15, 2011, MERS assigned the Deed of Trust to CM and CM appointed CWRC as Trustee. Both actions were recorded in the Clackamas County records. On April 7, 2011, Plaintiffs received the Notice of Default and Election of Sale and the Trustee Notice of Sale from CWRC. These documents also were recorded in the Clackamas County records. Plaintiffs allege these recorded documents reflect unlawful or potentially fraudulent acts. Paragraphs 15-17 of the Amended Complaint set out Plaintiffs' specific allegations in this regard:

> 14. On or about March 15,2011 CM claims to have become the successor in interest to the Plaintiff's Deed of Trust and through a

---

[4] Plaintiffs, however, have repeatedly admitted to this Court that they have not made any payments to any entity on their loan obligation since approximately September 2010. Despite their allegation that Defendants have not provided proof that Plaintiffs owe an obligation to any of them, Plaintiffs admit they negotiated with CM in August 2010 for the purpose of obtaining a modification of their existing loan.

4 - OPINION AND ORDER

document titled "Assignment of Deed of Trust"
signed by Scott Scheiner, Assistant Secretary
of MERS and Notarized on the same day by Alex
D. Grossman of Missouri.  The document was
entered into Clackamas County official
records under the recorder's number, 2011-
019535, on March 30, 2011.  See Exhibit 9 -
Assignment of Deed of Trust.

15.  On or about March 15, 2011 CWRC claims
to have become the successor trustee or the
Deed of Trust by and through a document
titled "Substitution of Trustee," signed by
Scott Scheiner, Vice President, CitiMortgage,
Inc. and Notarized on the same day by Alex D.
Grossman of Missouri.  The document was
entered into Clackamas County official
records under the recorder's number,
2011-019536, on March 30, 2011.  See Exhibit
10 - Substitution of Trustee

16.  On or about April 7, 2011 Plaintiffs
received a document titled "Notice of Default
and Election to Sell," created, recorded and
sent to Plaintiffs by CWRC, the signatory of
which was Yvonne J. Wheeler, A.V.P.
(presumably Assistant Vice President), a
known robo-signer, who signed the Notice on
March 23, 2011.  The Notice was not notarized
until March 29, 2011 by Rosalyn Hall of
California, leaving no doubt that Wheeler was
not in the Notaries presence when Hall
notarized the document.  The document was
entered into Clackamas County official
records under the recorder's number,
2011-019537, on March 30, 2011.  See Exhibit
11 - Notice of Default and Election to Sell.

17.  On or about April 7. 2011 Plaintiffs
received a document titled "Trustee's Notice
of Sale" from CWRC dated March 23, 2011 and
signed by an unknown person, whose corporate
capacity is absent and unknown.  The document
bears a certification stamp with the
signature of Naomi Faisel, claiming "I
CERTIFY THIS DOCUMENT IS A CORRECT COPY OF
THE ORIGINAL."  The signature on the
certification stamp and the signature as a

> designee for CWRC are different.  No
> acknowledgement or jurat notarization is
> present.  See Exhibit 12 - Trustee's Notice
> of Sale.  See also Plaintiffs' Affidavit ¶ 8.

In their Amended Complaint Plaintiffs seek declaratory relief "as to the legal duties of the parties and their agents, especially those claiming Plaintiffs to be in default and those claiming they are the entity entitled to payment" based on their allegations that (1) MIT was not the lender-in-fact on their original loan, (2) Defendants have not met the condition precedent under Oregon law (Or. Rev. Stat. § 86.735) for non-judicial foreclosures that require proof of the borrower's default and of the entity entitled to payment, and (3) Defendants have not met the condition precedent under Oregon law for non-judicial foreclosure that requires all assignments of a mortgage to be recorded in the county records.

Plaintiffs seek the following specific declaratory relief and an award of costs in their Amended Complaint:

> a.  Declare that Defendants initiated this
>     controversy by claiming Plaintiffs are
>     in default to CM by causing to issue a
>     Notice of Default and Election to Sell.
>
> b.  Declare Defendants failed to establish
>     through evidence which would be
>     admissible at trial, Plaintiffs are in
>     default to CM or any another Defendant.
>
> c.  Declare Defendants failed to establish,
>     through evidence which would be
>     admissible at trial, the identity of the
>     entity entitled to payment.

       d.   Declare Defendants, prior to foreclosure, failed to record in the Clackamas County land records assignments required by the Pooling and Service Agreement.

       e.   Declare that Defendant MERS does not possess the written authority in the Deed of Trust or anywhere else, from the original obligee, or any successor, authorizing MERS as nominee, mortgagee or beneficiary.

       f .   Declare the only signature on the Deed of Trust is that of Plaintiffs, i.e. counterparty signatures are absent.

       g.   Declare Defendant is barred from using a non-judicial foreclosure.

Am. Compl. at 10-11.

## PROCEDURAL BACKGROUND

Although the nonjudicial sale of Plaintiffs' home was originally scheduled for August 1, 2011, the parties reached an agreement to postpone the sale to September 1, 2011.  Plaintiffs filed their original Complaint for Emergency Declaratory Relief on August 17, 2011.  After a hearing, the Court enjoined the sale of Plaintiffs' home by issuing a Temporary Restraining Order (TRO) (#7) on August 31, 2011.  At the hearing on August 31, 2011, the Court ordered Plaintiffs to post security in the amount of $500.00, which Plaintiffs paid on September 8, 2011.

On September 30, 2011, CM and MERS filed their Motion (#20) to Modify Security for the TRO seeking a monthly security amount

7 - OPINION AND ORDER

equal to the monthly payment owed on the balance of Plaintiffs'
mortgage.

Defendants each subsequently filed their initial Motions to
Dismiss.  On November 10, 2011, CM and MERS filed their Motion
(#38) to Vacate the TRO.

At the hearing on November 10, 2011, the Court granted the
Motion by Defendants to modify Plaintiffs' security and set a
briefing schedule for the parties to state their positions as to
the fair rental value of the home.  On November 15, 2011, the
Court issued an Opinion and Order (#42) in which the Court (1)
granted the Motion to Dismiss by DB and MIT on the ground that
there is not any justiciable legal dispute between Plaintiffs and
DB or MIT; (2) denied the Motion to Dismiss by CWRC on the ground
that there is a legal dispute between Plaintiffs and CWRC, the
Trustee of the Deed of Trust at issue and the party invoking the
right of sale; and (3) granted the Motion to Dismiss by CM and
MERS and dismissed Plaintiffs' claims against those Defendants
with leave to file an Amended Complaint by December 15, 2011.
The Court advised it would consider the pending Motion to Vacate
in light of any Amended Complaint.

In its Order (#52) issued December 12, 2011, the Court
modified Plaintiffs' security requirement for maintaining the TRO
to $2,000 per month (the amount determined by the Court to
represent the fair rental value of Plaintiffs' home) to be paid

8 - OPINION AND ORDER

on the fourth of each month.

Plaintiffs filed their Amended Complaint on December 15, 2011, in which they seek a declaratory judgment as set out above and allege violations of Oregon Revised Statute § 86.735 against CM, MERS, and CWRC.  Plaintiffs again include MIT and DB as Defendants in their Amended Complaint and allege almost the identical facts and claims as in their original Complaint.

On December 30, 2011, CM and MERS filed a Motion (#59) to Dismiss the Amended Complaint.  On January 3, 2012, Defendants MIT and DB also filed a Motion (#63) to Dismiss the Amended Complaint.

At the hearing on January 4, 2012, the Court heard argument on the Motion to Vacate the TRO and the Motions to Dismiss. Plaintiffs stated they could not afford and did not intend to pay the modified security amount to maintain the TRO.  At the hearing and in its Opinion and Order (#67) issued on January 5, 2012, the Court granted the Motion to Dismiss filed by Defendants MIT and DB for failure to state a claim.  The Court took under advisement the remaining Motion (#59) to Dismiss and the still-pending Motion (#38) to Vacate the TRO by MERS, CM, and CWRC.


**STANDARDS**

**I.    Motion to Dismiss.**

>    To survive a motion to dismiss, a complaint
>    must contain sufficient factual matter,

9 - OPINION AND ORDER

> accepted as true, to "state a claim to relief
> that is plausible on its face." [*Bell
> Atlantic v. Twombly*, 550 U.S. 554,] 570, 127
> S. Ct. 1955.  A claim has facial plausibility
> when the plaintiff pleads factual content
> that allows the court to draw the reasonable
> inference that the defendant is liable for
> the misconduct alleged.  *Id*. at 556. . . .
> The plausibility standard is not akin to a
> "probability requirement," but it asks for
> more than a sheer possibility that a
> defendant has acted unlawfully.  *Ibid*.  Where
> a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it
> "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"
> *Id*. at 557, 127 S. Ct. 1955 (brackets
> omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell

Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007).

The Supreme Court further clarified in *Iqbal* the

requirements for a pleading to survive a motion to dismiss:

> As the Court held in *Twombly*, 550 U.S. 544,
> 127 S. Ct. 1955, 167 L. Ed. 2d 929, the
> pleading standard Rule 8 announces does not
> require "detailed factual allegations," but
> it demands more than an unadorned, the-
> defendant-unlawfully-harmed-me accusation.
> *Id*., at 555, 127 S. Ct. 1955 (citing *Papasan
> v. Allain*, 478 U.S. 265, 286, 106 S. Ct.
> 2932, 92 L. Ed. 2d 209 (1986)).  A pleading
> that offers "labels and conclusions" or "a
> formulaic recitation of the elements of a
> cause of action will not do."  550 U.S., at
> 555, 127 S. Ct. 1955.  Nor does a complaint
> suffice if it tenders "naked assertion[s]"
> devoid of "further factual enhancement."
> *Id*., at 557, 127 S. Ct. 1955.

129 S. Ct. at 1949-50.

"[A] complaint may survive a motion to dismiss only if,

10 - OPINION AND ORDER

taking all well-pleaded factual allegations as true, it contains
enough facts to 'state a claim to relief that is plausible on its
face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir.
2010)(quoting *Iqbal*, 129 S. Ct. at 1949 (2009), and *Twombly*, 550
U.S. at 570). A *pro se* plaintiff's complaint "must be held to
less stringent standards than formal pleadings drafted by
lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(per
curiam). Thus, the court must construe *pro se* filings liberally.
If a plaintiff fails to state a claim, "[l]eave to amend should
be granted unless the pleading 'could not possibly be cured by
the allegation of other facts,' and should be granted more
liberally to *pro se* plaintiffs." *Ramirez v. Galaza*, 334 F.3d
850, 861 (9th Cir. 2003)(quoting *Lopez v. Smith,* 203 F.3d 1122,
1130 (9th Cir. 2000)).

## II. Declaratory Judgments.

The Declaratory Judgment Act provides in relevant part that
"[i]n a case of actual controversy within its jurisdiction, . . .
any court of the United States, upon the filing of an appropriate
pleading, may declare the rights and other legal relations of any
interested party seeking such declaration, whether or not further
relief is or could be sought." 28 U.S.C. § 2201(a). "The
limitations that Article III imposes upon federal court
jurisdiction are not relaxed in the declaratory-judgment context.
Indeed, the case-or-controversy requirement is incorporated into

the language of the very statute that authorizes federal courts to issue declaratory relief." *Gator.com Corp. V. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005).  As the Supreme Court held in *MedImmune Inc. v. Genetech Inc.*:

> *Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not.  Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.,* at 240-241, 57 S. Ct. 461.  In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941), we summarized as follows:  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

549 U.S. 118, 127 (2007).  The Supreme Court has emphasized the district court's "unique and substantial" discretion as to whether to issue declaratory judgments. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The Court underscored "[i]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."

12 - OPINION AND ORDER

*Id.* at 288.  "When there is no actual controversy, the court has no discretion to decide the case.  When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991).


### MOTION (#59) TO DISMISS BY CM, MERS, AND CWRC

Defendants CM, MERS, and CWRC move the Court to Dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12 for failure to state a claim.  Specifically, Defendants contend they have met the requirements under Oregon Revised Statute § 86.735 that permits CWRC, as trustee of the Deed of Trust on Plaintiffs' home, to proceed with a nonjudicial foreclosure.  In support of their Motion, Defendants provide a copy of the executed and recorded Deed of Trust with the Declaration (#60) of Leta E. Gorman.

**I.    The Law.**

Oregon Revised Statute § 86.735, a part of the Oregon Trust Deed Act, provides in relevant part:

> The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:
>
> (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated; and

13 – OPINION AND ORDER

(2) There is a default by the grantor or
other person owing an obligation, the
performance of which is secured by the trust
deed, or by their successors in interest with
respect to any provision in the deed which
authorizes sale in the event of default of
such provision; and

(3) The trustee or beneficiary has filed for
record in the county clerk's office in each
county where the trust property, or some part
of it, is situated, a notice of default
containing the information required by ORS
86.745 and containing the trustee's or
beneficiary's election to sell the property
to satisfy the obligation; and

(4) No action has been instituted to recover
the debt or any part of it then remaining
secured by the trust deed . . . .

## II.  The Court's January 5, 2012, Opinion and Order (#67).

In its Opinion and Order (#67), the Court stated:

As the Court explained to Plaintiff Rick
Sovereign at the hearing, the Court's task in
resolving Defendants' Motion to Dismiss is to
determine whether Plaintiffs have stated a
plausible claim for relief.  Because
Plaintiffs' only potential claim in this
matter is one for "declaratory judgment,"
Plaintiffs must be able to show in their
response to Defendants' Motion that they have
stated a legal basis for relief that
satisfies the "case-or-controversy"
requirement for this Court's jurisdiction
over an action for declaratory relief.  *See*
Opin. & Order (#42) issued November 15, 2011,
at 7-9.  Plaintiffs' factual allegations
concerning their suspicions about
transactions involving their mortgage between
its origination and the issuance of the
Notice of Default and Election to Sell are
alone insufficient to state a legal basis for
such relief.  As noted, Plaintiffs must
provide some basis in law that, when
considered in light of their factual

14 – OPINION AND ORDER

> allegations, shows Plaintiffs have a legal
> "justiciable" dispute with Defendants that
> the Court has authority to resolve by
> declaration.  As explained at oral argument,
> Defendants do not bear any burden of proof at
> this stage of the proceedings.  Furthermore,
> as explained by Magistrate Judge Paul Papak
> in *Stewart v. Mortgage Electronic
> Registration Systems*, the Oregon Trust Deed
> Act (under which Plaintiffs proceed here)
> "does not require presentment of the Note or
> any other proof of 'real party in interest'
> or 'standing,' other than the Deed of Trust."
> No. 09-CV-687-PK, 2010 WL 1055131, at *12 (D.
> Or. Feb. 9, 2010).

Opin. and Order (#67) at 6-7.

## III. Analysis.

Viewed in its most liberal terms, Plaintiffs' Amended Complaint sets out five sets of facts that they contend entitle them to the declarations they seek from this Court: (1) MIT was not the lender-in-fact in the original loan transaction, which nullifies each of the legal documents stemming from the original mortgage transaction; (2) MERS is not the beneficiary of the Deed of Trust under Oregon law; (3) Plaintiffs are not in default, and, in any event, Defendants have not provided sufficient proof that they are entitled to payments under Plaintiffs' mortgage; (4) there are unrecorded assignments of Plaintiffs' mortgage, and Defendants, therefore, are not in compliance with § 86.735 and cannot proceed with a nonjudicial foreclosure; and (5) irregularities with the documents related to Plaintiffs' mortgage that have been recorded in the Clackamas

County records preclude nonjudicial foreclosure.

**A.   Lender-in-Fact.**

Plaintiffs allege MIT did not actually fund the loan even though MIT was designated as the lender in the original lending documents, the Promissory Note, and the Deed of Trust.  Thus, Plaintiffs allege MIT was not the lender in the original transaction but was instead a mortgage broker.

As noted, the Court dismissed MIT as a party to this matter for the reasons explained in the Court's Opinion and Order (#42) issued on November 15, 2011; at the hearing on January 4, 2012; and in its Opinion and Order (#67) issued on January 5, 2012. Although Plaintiffs maintain they have not alleged and do not intend to allege a claim of fraud or wrongdoing against MIT, Plaintiffs, nevertheless, assert the following in their Amended Complaint:  "If MIT was not the Lender, all transactions and the attendant documents based on that fact are a nullity, not the least of which is the following:  1) Promissory Note, 2) Deed of Trust, 3) Assignments, 4) Substitution of Trustee, 5) Notice of Default and Election to Sell, and 6) Notice of Trustee Sale."

Plaintiffs admit they received the proceeds of the loan in the sum of $333,000 for which they bargained in the original mortgage transaction.  Plaintiffs, however, assert those funds were provided by a third party rather than by MIT.  Assuming at this stage that MIT received funding from some external "lender"

16 – OPINION AND ORDER

to fund Plaintiffs' loan, the Court must determine whether this fact would entitle Plaintiffs to the declaratory relief sought by Plaintiffs.

As noted, the Court has instructed Plaintiffs numerous times to explain the legal basis for this cause of action.  The Note and the Deed submitted with Plaintiffs' Amended Complaint appoint MIT the "Lender" that Plaintiffs promised to pay.  The Court remains unaware of any case, statute, or regulation that requires a party to a mortgage transaction to be the entity from which the funds for the loan originate in order for that party to be designated the lender in the mortgage documents.  Thus, Plaintiffs have not shown a plausible basis for relief based on the alleged fact that MIT obtained funds for the mortgage transaction from some other source, and, in any event, the Court concludes that fact is not sufficient in this context to render the mortgage documents and the subsequent related transactions "nullities."

Accordingly, the Court grants Defendants' Motion to Dismiss as to this basis for declaratory relief.

### B.   MERS as Beneficiary of the Deed of Trust.

To the extent that Plaintiffs continue to maintain MERS is a sham beneficiary or that MERS cannot be a beneficiary of the Trust Deed, the Court has already addressed those arguments in its Opinion and Order (#42) issued on November 15, 2011, and

17 - OPINION AND ORDER

similar arguments in its recent opinion in *Reeves v. Recontrust Co, N.A.*, No. 11-CV-1278-BR, Docket No. 12 (D. Or. Feb. 28, 2012)(citing *James v. Recontrust Co.*, No. 11-CV-324-ST, 2011 WL 3841558, at *6-9 (D. Or. Aug. 26, 2011)(assesses recent federal and state judicial opinions in Oregon with respect to the involvement of MERS as nominee of a lender and beneficiary of a deed of trust in a mortgage transaction and reaches the same conclusion as this Court)).  The Court need not repeat those arguments here.

Although District Judge Michael H. Simon recently issued an Opinion and Order declining to adopt some of Magistrate Judge Janice M. Stewart's rationale in *James* on which this Court relied in *Reeves*, the Court respectfully adheres to the Magistrate Judge's reasoning and to the analysis of District Judge Michael Mosman in *Beyer v. Bank of America* in which he concluded language similar to that in the Deed of Trust at issue renders MERS a beneficiary of the Deed under Oregon law.  *See Beyer v. Bank of Am., N.A.*, 800 F. Supp. 2d 1157, 1159-62 (D. Or. Aug. 2, 2011).

In summary, the Court reiterates its conclusion that Plaintiffs have not stated a claim based on the involvement of MERS or on a lack of authority for MERS to act as a beneficiary of the Deed and to transfer the mortgage in accordance with the express provisions of the Deed.

C.    **Default.**

Plaintiffs assert they are not in default, and, in any event, Defendants have not proven they are entitled to payment on the Note.  Accordingly, Plaintiffs allege Defendants have failed to comply with Oregon Revised Statute § 86.735(2).

Plaintiffs' assertion that they are not in default is an implausible one.  Plaintiffs have provided the Court with the Note and the Deed for their mortgage.  The Note requires monthly payments on the loan until February 1, 2037; Plaintiffs have admitted to this Court that they stopped making payments on their loan on or about September 2010 without paying off the balance of the loan; and the Notice of Default and Election to Sell indicates Plaintiffs have failed to make their monthly payments on an outstanding principal balance of $321,016.56.  Plaintiffs do not explain why their failure to make the loan payments does not constitute a default on their loan.

In addition, Plaintiffs' assertion that they are not in default to any Defendant is similarly implausible in light of the fact that Plaintiffs negotiated with CM in an effort to modify the terms of their mortgage loan to make it more affordable.  To enter into such negotiations, Plaintiffs must have believed CM had the authority to make modifications to their loan.  In any event, CM is not the party responsible for the foreclosure in this matter.  CWRC is the appointed Trustee under the Trust Deed

19 – OPINION AND ORDER

on Plaintiffs' home, and CWRC has invoked the right of

foreclosure set out in the Deed of Trust.

As noted, to invoke a nonjudicial foreclosure under the

Oregon Trust Deed Act, § 86.735(2) requires:

> There is a default by the grantor or other
> person owing an obligation, the performance
> of which is secured by the trust deed, or by
> their successors in interest with respect to
> any provision in the deed which authorizes
> sale in the event of default of such
> provision.

Thus, the statute requires only a default on an obligation

secured by a deed of trust that authorizes a sale in the event of

a default; *i.e.*, it does not, as Plaintiffs contend, require

identification of the entity entitled to payment of the

obligation.  As the Court stated at the hearing on January 4,

2012, and in its Opinion and Order (#67) issued on January 5,

2012, Defendants do not bear the burden of proof as to any matter

at this stage of the proceedings despite Plaintiffs' repeated

demands in their Amended Complaint and briefing for Defendants to

"prove" by "evidence admissible at trial" that Plaintiff is in

default and to whom their obligation is owed.  The fact that

Defendants have not "proved" Plaintiffs are in default or that

one of Defendants is the holder of the Note does not bear on

whether Plaintiffs have stated a claim for relief in their

Amended Complaint.  *See Stewart v. Mortgage Elec. Registration*

*Sys.*, No. 09-CV-687-PK, 2010 WL 1055131, at *12 (D. Or. Feb. 9,

2010)(The Oregon Trust Deed Act "does not require presentment of the Note or any other proof of 'real party in interest' or 'standing,' other than the Deed of Trust.").  Thus, Plaintiffs' alternate contention that Defendants have not demonstrated they have "standing" to file a Motion to Dismiss is merely another attempt to place a burden on Defendants that does not exist at this stage of the proceedings.

The Court is satisfied on this record that the conditions set out in § 86.735(2) have been met and that Plaintiffs cannot state a claim based on their allegations that they are not in default or that Defendants have not shown to whom the obligation is owed.  Accordingly, the Court grants Defendants' Motion to Dismiss as to this basis for declaratory relief.

**D. Unrecorded Assignments.**

Plaintiffs also contend Defendants have failed to meet the requirements of § 86.375(1) because they have failed to record each of the assignments of Plaintiffs' mortgage.  Specifically, Plaintiffs contend their mortgage is governed by a Pooling and Servicing Agreement that securitized their mortgage and resulted in numerous assignments of their mortgage that have not been properly recorded in the Clackamas County records.  Accordingly, Plaintiffs contend Defendants are not entitled to proceed with a nonjudicial foreclosure.

Beyond their general assertion that their mortgage has been

21 - OPINION AND ORDER

assigned and transferred as a part of a pool of securitized
mortgages, Plaintiffs' only specific allegation of an unrecorded
assignment of their mortgage stems from their research on the
internet that revealed Fannie Mae may have an interest in their
mortgage.  Nevertheless, the Court will assume at this stage that
there have been transfers of the mortgage beyond those plainly
indicated in the documents submitted with Plaintiffs' Amended
Complaint.

    Section 86.735(1) requires:

        The trust deed, any assignments of the trust
        deed by the trustee or the beneficiary and
        any appointment of a successor trustee [must
        be] recorded in the mortgage records in the
        counties in which the property described in
        the deed is situated.

As noted, this record reflects the original Deed of Trust, the
assignment of the Deed of Trust from MERS to CM, the appointment
by CM of CWRC as the substitute Trustee, and the Notice of
Default and Election to Sell have each been recorded in the
Clackamas County records.

    The only question before the Court raised by Plaintiffs'
allegation of unrecorded transfers is whether § 86.735(1)
requires any and all assignments of the mortgage to be recorded
as a prerequisite to a nonjudicial foreclosure.  By its plain
language, § 86.735(1) applies only to transfers of a trust deed
by the trustee or the beneficiary.  The Oregon Trust Deed Act
does not regulate transfers of promissory notes, which are

22 - OPINION AND ORDER

themselves negotiable instruments and not conveyances of real

property.  The statute controls the power of foreclosure by

requiring public disclosure of deeds of trust, their appointed

trustees, and the transfers of those instruments.  Under similar

circumstances, Magistrate Judge Janice M. Stewart addressed the

application of § 86.735(1) in *James* when analyzing the

plaintiffs' contention that an assignment of their promissory

note constituted an assignment of the mortgage that must be

recorded:

> That concept is embodied in Oregon law.
> ORS 86.110(1)("a promissory note secured by a
> mortgage on real property [can be]
> transferred by indorsement without a formal
> assignment of the mortgage").  Since the
> trust deed follows the note, whoever holds
> the note by transfer also has the power to
> foreclose the trust deed, even without
> recording an assignment of the mortgage.
> *Barringer v. Loder*, 47 Or 223, 227-29, 81 P
> 778, 780 (1905).
>
> Simply put, the security interest
> embodied in the trust deed follows any
> transfer of the note in favor of the lender
> and its successors, such that the trust deed
> does not become split or separated from the
> note.  However, plaintiffs seek to use this
> legal fiction to defeat its very purpose by
> depriving the note holder of the full benefit
> of its security instrument and the right to
> foreclose by advertisement and sale.  The
> court can find no authority to support
> plaintiffs' novel theory.
>
> Nothing in Oregon law requires recording
> of each assignment of the trust deed when the
> underlying note is transferred.  The only
> recording requirement is found in ORS
> 86.735(1) for all "assignments of the trust

deed by the trustee or the beneficiary"
before a non judicial foreclosure by
advertisement and sale.  However, this
statute by its express terms only requires
the recording of assignments by the parties
who have a recorded interest in the real
property providing security, that is, "the
trustee or the beneficiary."

Although a transfer or assignment of the
note transfers the security interest for the
protection of the beneficiary, it is not the
same act as "an assignment of the trust deed
by the trustee or the beneficiary"
contemplated by ORS 86.735(1).  That statute
makes no mention of recording a transfer of
the promissory note, opposed to the deed of
trust.  A promissory note is not a conveyance
of real property and is not recorded or even
susceptible to recordation.  ORS 93.610,
93.630, 205.130.  Recording interests in a
promissory note would not serve the purpose
of the recording statutes because the
promissory note does not contain a
description of the property, does not
transfer title to real property, and does not
affect title.

Plaintiffs do not allege that either the
Trustee (Fidelity National) or the
Beneficiary (MERS) made any assignment of the
Deed of Trust prior to the assignment by MERS
to BACHLS.

*James v. Recontrust Co.*, No. 11-CV-324-ST, 2011 WL 3841558, *10-
11 (D. Or. Aug. 26, 2011).  As noted, the Court finds Magistrate
Judge Stewart's reasoning to be sound and respectfully concludes
Judge Simon's later opinion does not foreclose the Magistrate
Judge's interpretation of Oregon law adopted by this Court in
*Reeves* and herein.

Plaintiffs assert their mortgage was transferred or assigned

24 - OPINION AND ORDER

as a part of a securitization pool, but they do not allege MERS, CWRC (the present Trustee), or any prior Trustee (such as the original Trustee, Western Title and Escrow) made transfers of the Deed that have not been recorded.  To the extent that Plaintiffs' allegations could be so construed, the lack of any underlying factual development renders them insufficient under *Iqbal* to state a legal basis for a claim.  *See* 129 S. Ct. at 1949-50.  As the Court concluded in its Opinion and Order (#67) issued on January 5, 2012, "Plaintiffs' factual allegations concerning their suspicions about transactions involving their mortgage between its origination and the issuance of the Notice of Default and Election to Sell are alone insufficient to state a legal basis for such relief."  Plaintiffs rely only on conjecture as the basis for their assertion that Defendants have not recorded each of the required transactions.

Accordingly, the Court grants Defendants' Motion to Dismiss as to this basis for declaratory relief.

**E.   Irregularities in Recorded Documents.**

Finally, Plaintiffs contend the assignment of the Deed from MERS to CM, the appointment by CM of CWRC as substitute Trustee, the Notice of Default and Election to Sell, and the Trustee's Notice of Sale each are the result of unlawful actions by Defendants or otherwise do not constitute valid recordings that satisfy § 86.735(1).  Accordingly, Plaintiffs contend Defendants

cannot proceed with nonjudicial foreclosure.

> **1.    Assignment of Deed from MERS to CM and Substitution of CWRC as Trustee.**

Plaintiffs appear to allege the Assignment of Deed of Trust (recorded in the Clackamas County records, Exhibit 9 to Plaintiffs' Amended Complaint) and the Substitution of Trustee (also recorded, Exhibit 10 to Plaintiffs' Amended Complaint) are invalid because both were executed by one person, Scott Scheiner, who purports to be both the Assistant Secretary of MERS on the Assignment and a Vice President of CM on the Substitution of Trustee.

At the hearing on January 4, 2012, the Court noted the mere fact that one person signed the Assignment and the Substitution of Trustee in a dual capacity is not enough to nullify those documents or to warrant declaratory relief.  *See James*, 2011 WL 3841558, at *12.  In order for this claim to survive the Motion to Dismiss by Defendants, the Court instructed Plaintiffs that they would need to provide some legal authority to support their theory that such a practice is illegitimate and renders the Assignment or Substitution invalid.  Plaintiffs have failed to do so.

Accordingly, the Court grants Defendants' Motion to Dismiss as to this basis for declaratory relief.

> **2.    Notice of Default and Election to Sell.**

Plaintiffs also assert the Notice of Default and

26 - OPINION AND ORDER

Election to Sell (recorded in the Clackamas County records,
Exhibit 11 to Plaintiffs' Amended Complaint) is legally
insufficient because it was signed by a "known robo-signer" and
the signature was not made in the presence of the notary.
Specifically, Plaintiffs point out that the Notice bears a date
of March 23, 2011, and they allege Yvonne J. Wheeler, a "robo-
signer," executed the document on March 23, 2011, outside of the
presence of the Notary as evidenced by the fact that the Notary
did not sign the Notice until six days later on March 29, 2011.

As the Court pointed out to Plaintiffs at the hearing
on January 4, 2011, the mere fact that the Notice bears a printed
date of March 23, 2011, below Wheeler's signature does not
demonstrate any fraud or illegal act by the Notary who attested
on March 29, 2011, that she witnessed Wheeler's signature.  The
time disparity that Plaintiffs seize on is insufficient to form
the basis for this claim under these circumstances.

In addition, Plaintiffs' assertion that Wheeler is a
"known robo-signer," coupled with the lack of any authority to
support Plaintiffs' position that such a fact creates an
actionable claim, is insufficient to form the basis of this
claim.  Plaintiffs acknowledge they are not advancing a claim for
fraud and are not making any specific allegations of intentional
wrong-doing by Defendants.

Accordingly, the Court grants Defendants' Motion to Dismiss

27 - OPINION AND ORDER

as to this basis for declaratory relief.

      **3.   Notice of Sale.**

      Plaintiffs also contend the Notice of Sale (recorded in the Clackamas County records, Exhibit 12 to Plaintiffs' Amended Complaint) is legally insufficient because the signature of Naomi Feistel on the first and second pages "is different" and the document lacks an "acknowledgement or jurat notorization." The Court's review of the signatures does not bear out Plaintiffs' assertion that they are different. They appear to be the same signature.

      In addition, Plaintiffs assert the lack of an "acknowledgment" or "jurat notification" nullifies the Notice of Sale. Again Plaintiffs' allegation lacks any legal authority that requires such an acknowledgment. The Court instructed Plaintiffs at the hearing on January 4, 2012, and in its Opinion and Order (#67) issued on January 5, 2012, that Plaintiffs must provide legal authority to show their factual assertions entitle them to some form of legal relief. The Court has reviewed the detailed requirements of Oregon law for Notices of Sale, and they do not require the acknowledgment that Plaintiffs assert is mandatory. *See* Or. Rev. Stat. § 86.745. Thus, the Court does not find any deficiency in the Notice of Sale under § 86.745 and, therefore, grants Defendants' Motion to Dismiss as to this basis for declaratory relief.

28 - OPINION AND ORDER

In summary, the Court has again reviewed each of Plaintiffs' alleged bases for declaratory relief and has concluded Plaintiffs have failed to state factual and legal grounds on which relief could be granted.  Accordingly, the Court **grants** Defendants' Motion to Dismiss for Failure to State a Claim and **dismisses** Plaintiff's Amended Complaint.

As noted, the Court has "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgments Act even when there is an actual justiciable dispute between the parties. *Winter*, 515 U.S. at 286-87.  Based on the foregoing and on the record as a whole, the Court concludes there is not any basis nor compelling reason for the Court to declare the rights of the parties in this matter. Thus, the Court declines to do so and, in the exercise of its discretion, **dismisses** this matter.

### DEFENDANTS' MOTION (#38) TO VACATE THE TRO

Defendants move the Court to vacate the TRO (#7) in effect since August 31, 2011.

A party seeking a temporary restraining order or preliminary injunction must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.

29 - OPINION AND ORDER

*Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008).
"The elements of [this] test are balanced, so that a stronger
showing of one element may offset a weaker showing of another.
For example, a stronger showing of irreparable harm to plaintiff
might offset a lesser showing of likelihood of success on the
merits." *Alliance For The Wild Rockies v. Cottrell*,
No. 09-35756, 2011 WL 208360, at *4 (9th Cir. Jan. 25, 2011)
(citing *Winter*, 129 S. Ct. at 392).

The Court's analysis of the second and fourth factors are
unchanged from the Court's original analysis in its TRO (#7)
issued on August 31, 2011.  In addition, the Court addressed the
balance of the equities in this matter in its Opinion and Order
(#67) issued on January 5, 2012:

> At the hearing on Defendants' Motion to
> Vacate the TRO, Plaintiffs represented that
> they could not pay and, therefore, did not
> intend to pay the $2,000 monthly security
> required by the Court as a condition of
> maintaining the Temporary Restraining Order
> (TRO) in its Order (#52) issued on December
> 12, 2011.  As set out on the record, the
> Court has determined Plaintiffs' intended
> failure to pay this security likely tips the
> Court's analysis of the equities in favor of
> Defendants in this matter under this factor
> of the four-part test for determining whether
> to grant (or to maintain) injunctive relief.
> Nonetheless, the Court must still weigh
> Plaintiffs' likelihood of success on the
> merits to determine whether it is appropriate
> to maintain the TRO, an issue which is
> inextricably intertwined with the Court's
> resolution of the recently-filed Motion by
> Defendants CM and MERS (#59) to Dismiss
> [Plaintiffs' First Amended Complaint] for

> Failure to State a Claim.  The Court,
> therefore, will consider and resolve both
> Motions (#38, #59) simultaneously.

Opin. and Order (#67) at 2-3.

In light of the foregoing, the fact that Plaintiffs have lived in their home since approximately September 2010 without paying their mortgage, and the costs to Defendants associated with this litigation, the Court now concludes the equities favor Defendants.  Accordingly, the final factor the Court must weigh is Plaintiffs' likelihood of success on the merits.

The Court's initial determination that Plaintiffs had shown a likelihood of success on the merits rested on several factors: the impending nature of the nonjudicial foreclosure and scheduled sale of Plaintiffs' home, the recent unsettled state of the law in this area, and the nature and extent of the allegations in the original Complaint filed by *pro se* Plaintiffs.  In light of the Court's assessment of the equities, the irreparable nature of the loss of Plaintiffs' home, and the Court's perception that there would only be a "short delay" of the foreclosure while determining whether Plaintiffs' Complaint had merit, the Court found on August 31, 2011, that Plaintiffs had demonstrated a sufficient likelihood of success to sustain a temporary intervention by the Court.

The Court notes Plaintiffs have had six months to file two complaints and to allow them to demonstrate the plausibility of

31 - OPINION AND ORDER

their claims in several hearings, during which Plaintiffs have lived rent free in the home at issue here.  Moreover, now that the Court has dismissed Plaintiffs' Amended Complaint, there is not any question they are unable to demonstrate likely success on the merits of their claims.  Accordingly, the Court **grants** Defendants' Motion (#38) and **vacates** the TRO (#7) issued on August 31, 2011.

## CONCLUSION

For these reasons, the Court **GRANTS** the Motion (#59) to Dismiss by Defendants CM, MERS, and CWRC and **DISMISSES with prejudice** Plaintiffs' Amended Complaint against them.  The Court also **GRANTS** the Motion (#38) to Vacate Temporary Restraining Order by Defendants CM, MERS, and CWRC and **VACATES** the Temporary Restraining Order (#7) issued on August 31, 2011.

The Court **directs** Defendants to confer and to submit to the Court **no later than March 15, 2012,** an Order in which Defendants stipulate as to the particular Defendant(s) to whom Plaintiffs' security ($500.00 cash bond) should now be released.

IT IS SO ORDERED.

DATED this 5th day of March, 2012.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

32 - OPINION AND ORDER